## Case No. 12,664.

### The SENATOR.

[Brown, Adm. 372.] [1]

District Court, E. D. Michigan. March, 1872.

SALVAGE—CASE OF APPARENT DERELICT—LIABILITY OF SALVORS FOR NEGLIGENCE.

1. A vessel and cargo, valued at $5,000, were found in Lake Erie, waterlogged, abandoned, and apparently, though not in fact derelict. A portion of her cargo was taken off and put upon the salving vessel, a steam barge, by which she was towed to a place of safety, the whole time occupied by the service being six hours. Held, that, under the circumstances, $75 was a proper salvage compensation.

[Cited in Cope v. Vallette Dry-Dock Co., 16 Fed. 926; The Mary E. Dana, 17 Fed. 357; The Ann L. Lockwood, 37 Fed. 237.]

2. Salvors are liable for damage done to the sails of the vessel saved by being negligently left exposed to sparks from the salving vessel.

[Cited in The Albany, 44 Fed. 434.]

Libel for salvage. The scow Senator was bound on a voyage from Saginaw to Toledo, with a cargo of lumber. Having encountered a storm, she was found, on the night of the 22d of April, 1869, to be leaking. When she had arrived off Monroe light, and some five to seven miles distant from it, she became so waterlogged that she could not proceed. She then, as testified by her master and crew, came to an anchor, and the master went ashore at Monroe in quest of a tug to tow the vessel to Toledo. Finding no tug at Monroe, he telegraphed to Toledo for one. The entire crew of the vessel left and went on shore with the master, for the reason that they had but one boat, and it was deemed unsafe to remain on board the vessel in her then condition, without a boat to make their escape if necessary. Libellant's vessel, the steam barge Mayflower, bound up from Toledo, made the Senator at about 10 o'clock in the forenoon of the next day, and, on coming up to her, found that a considerable portion of the top of her load of lumber had slid over to one side, causing the vessel to career considerably, and the lumber was gradually sliding off into the water with each roll of the vessel, and floating away. Finding no one on board, the master of the Mayflower at once set about gathering up the floating lumber, and also transferring lumber from

1 [Reported by Hon. Henry B. Brown, District Judge, and here reprinted by permission.]

the Senator to his vessel, which he continued to do until he had so gathered up and transferred about 5,000 feet, when the Senator became so relieved that she righted. The master of the Mayflower, finding that the rudder of the Senator was broken, or unshipped, so that she could not be towed astern, lashed her alongside his vessel, and started with her for Monroe harbor. On reaching shoal water, near the harbor, the Senator, from the amount of water she drew on account of her waterlogged condition, brought up on the bottom. At about this time, or very soon after, the master of the Senator came aboard and claimed the vessel and cargo, and thereupon the lumber which had been taken on board the Mayflower was transferred back to the Senator by the Mayflower's crew. The masters of the two vessels had some conversation about settling for the services of the Mayflower, but did not agree as to the amount, and no settlement was had. The Senator was then left in possession of her own master, and the Mayflower went to Monroe. This was about 4 o'clock in the afternoon. Soon after the Mayflower left, the tug, which had been telegraphed for, arrived from Toledo, took the Senator in tow, and towed her to Toledo, where she arrived some time in the night.

W. A. Moore, for libellant.

H. B. Brown, for claimant.

LONGYEAR, District Judge. The only question in this case is as to the amount the libellants ought to receive. Claims for salvage services are among the most meritorious known to the admiralty, and hence are viewed with favor. Such services are to be encouraged, and although the degrees of merit vary widely in different cases, yet in no case should the allowance be so small as to operate as a discouragement. The amount to be allowed, however, depends entirely upon the peculiar circumstances of each case; and while it should not be made so small as to operate as a discouragement to like efforts in the future, on the one hand, it should not be made so large as to operate oppressively to owners on the other. These remarks are especially applicable to a case like the present, where the property saved or aided was not derelict. There is some conflict between the testimony of the crews of the respective vessels as to whether the Senator was actually at anchor when discovered by the Mayflower; but I think there is a clear preponderance of proof that she was at anchor. Although the wind was blowing quite briskly from the land, and the swells were considerable from the effects of the then recent storm, and there were islands a few miles to leeward upon which the vessel might drift if she were to break from her moorings or drag her anchor, yet there does not appear to have been any imminent danger of her going to pieces, breaking from her moor-

ing, or dragging her anchor, and from the buoyancy of her cargo there was no immediate danger of her sinking. The cargo, however, was actually escaping, and was liable to the loss of a considerable portion of it; the weather was unsettled, and the storm might be renewed at any moment, endangering a total loss of vessel and cargo; and there being no one on board, she was, considering the distance from land, prima facie abandoned and derelict. It was therefore highly proper for the master of the Mayflower to do as he did—save the cargo from loss, which was then actually taking place, and to take vessel and cargo to a place of safety. In other words, the vessel and cargo were in a condition to have a salvage service performed. I think Mr. Parsons lays down the rule correctly when he says: "If a ship or property be left, though not derelict, one who in good faith takes possession as salvor, is not a trespasser, but has his reasonable claim for salvage, according to the good he actually does." 2 Pars. Shipp. & Adm. 283, 291. See, also, Talbot v. Seeman, 1 Cranch [5 U. S.] 1.

There are not, however, in this case any of those elements which lie at the foundation of large compensation to salvors, such as peril to life, or even of great hardships and dangers to the salvors, or to the safety of the salving vessel; no detention from any voyage, nor detention of freight on the part of the salving vessel; and not so far from shore but safety from storm could be sought at any time. Add to this the fact that the vessel was not in fact abandoned, but that succor had been applied for and was even then on the way, and arrived so soon that no great additional loss could have occurred beyond a few thousand feet of lumber, and I think libellants fail to make out a case for compensation much beyond what would be full, liberal pay for the time, work and labor actually spent and performed. I think, however, that something beyond mere compensation ought to be allowed, in consideration of the fact that a portion of the cargo was actually saved which would evidently have been otherwise lost, and also that efforts of this kind, when made in good faith, as they were undoubtedly in this case, ought to be encouraged. In this case the time actually spent was about six hours. The proof shows the value of the services of the Mayflower and her crew, on ordinary occasions, to have been $10 per hour. Although, in cases of the peculiar circumstances like the present, salvage is seldom, if ever, awarded at a percentage or proportion of the value of the property saved or benefited, yet value very properly has its influence in fixing the amount. In this case the value of the vessel and cargo was about $5,000, that of the vessel being $3,500, and that of the cargo $1,500.

Under all the circumstances of the case, I think $75 is a fair salvage compensation. From this, however, must be deducted $10

for damage done to the sails of the Senator by burning, in consequence of being negligently left exposed to the sparks from the Mayflower while towing the Senator alongside.

Decree for libellants for $65 and costs.

See The C. S. Butler, 2 Mar. Law Cas. (N. S.) 237.